**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | |
|---|---|
| Franklin E. Robson,                              ) | Civil Action No. 3:09-CV-2553-MBS |
|                                                  ) | |
|         Plaintiff,       ) | |
|                                                  ) | |
|    vs.                             ) | |
|                                                  ) | **ORDER AND OPINION** |
| Michael J. Astrue,                               ) | |
| Commissioner of Social Security                  ) | |
| Administration,                                  ) | |
|                                                  ) | |
|        Defendant.         ) | |
| _____) | |

On September 30, 2009, Plaintiff Franklin E. Robson filed the present action pursuant to 42 U.S.C. § 405(g) of the Social Security Act seeking judicial review of a final decision of Defendant Commissioner of Social Security Administration (the "Commissioner") denying Plaintiff's request for waiver of an overpayment of disability insurance benefits ("DIB") in the amount of $30,782.90. In accordance with 28 U.S.C. § 636(b) and Local Civil Rules 73.02(B)(2)(a) and 83.VII.02 *et seq.*, D.S.C., this matter was referred to United States Magistrate Judge Joseph R. McCrorey for pretrial handling.

Plaintiff's substantive brief is only one paragraph long, stating his intent to file a "Supplemental Plaintiff's Brief" in support of

> an Amended Complaint alleging causes of action in that the Administrative Law Judge abused his discretion, errors in the findings due to a lack of evidence, errors of law arising therefrom, that a procedural issue is involved that may affect the public interest, and omitted evidence from the transcript of this case that may alter any findings by this Court arising therefrom.

ECF No. 19. Plaintiff filed no further substantive memoranda elaborating upon any of these allegations, although in his "Motion to Enlarge Time" he did refer to his "difficulties in completing research and drafting pleadings and continued mental illness." ECF No. 22. Plaintiff's complaint

reveals that he does not contest the Commissioner's finding that he was overpaid or the calculated amount of overpayment. *See* ECF No. 1 at 4-5. Plaintiff only challenges the denial of his request for waiver of repayment. *Id.* Because Plaintiff is proceeding as a *pro se* litigant, the Court is bound to construe his pleadings liberally. The Magistrate Judge construed Plaintiff's filings as arguing that "the ALJ's decision is not supported by substantial evidence," ECF No. 31 at 4. Plaintiff does not object to the Magistrate Judge's characterization.

On June 28, 2011, the Magistrate Judge issued a Report and Recommendation ("R&R") recommending that the Commissioner's decision to deny Plaintiff's request for waiver of overpayment be reversed and remanded. ECF No. 31. On July 14, 2011, the Commissioner filed a brief objecting to the R&R and requesting that the Court affirm the Commissioner's decision. ECF No. 35. Plaintiff did not file a reply.

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight. The responsibility for making a final determination remains with this Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The Court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or may recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1). The Court is obligated to conduct a *de novo* review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.* For the reasons set forth below, the Court rejects the Magistrate Judge's recommendation and affirms the decision of the Commissioner.

## I. FACTS

**A.     Background**

Plaintiff first filed an application for DIB under the Social Security Act in September 1994,

alleging disability since August 31, 1992, due to major depression. R. 31. After an initial denial, Plaintiff was found to be disabled by an ALJ in an August 29, 1996 opinion, with an onset date of August 27, 1992. R. 31-36. Plaintiff received benefits on his own behalf and on behalf of his minor children. R. 114-16. Plaintiff did not receive benefits for the period between May 5, 1994, and May 3, 1995, because he was incarcerated for a felony. R. 35.

Plaintiff began working as an instructor at Trident Technical College ("Trident") on an independent contractor basis in late 1996. R. 103. His contracts were for a single semester only with no guarantee of future work, and were contingent upon successful completion of his classes for the semester. *Id.* On June 15, 1999, Plaintiff was hired by Trident as a permanent employee with an annual salary of $58,000.00 and a two-year probation period. R. 103-104.

On January 25, 2000, Plaintiff received a letter from the Social Security Administration ("SSA"), apparently in response to his request, verifying that he was considered 100% disabled and had been receiving DIB continuously since September 1993. R. 42. On February 21, 2000, Plaintiff filed a "Report of New Information" with the SSA stating that he had returned to work on June 15, 1999 and had earned more than $700 per month since then. R. 175. On May 1, 2000, the SSA informed Plaintiff that a Continuing Disability Work Review was being conducted. R. 43. On May 18, 2000, a Trident Human Resources Specialist wrote a letter to the SSA explaining that Plaintiff had worked as an independent contractor from late 1996 until being hired as a permanent employee and listing Plaintiff's earnings during this period. R. 103. On May 30, 2000, Plaintiff completed a "Work Activity Report" describing his work for Trident as an independent contractor between October 1996 and June 1999. R. 105. In a letter dated December 7, 2000, the SSA advised Plaintiff to stop cashing DIB checks if he was still working. R. 44.

In April 2003, the SSA determined that Plaintiff's trial work period[1] lasted from June 1996 until February 1997. R. 55. Accordingly, Plaintiff's disability was found to have ceased in March 1997. *Id.* The SSA also determined that Plaintiff's extended period of eligibility[2] for DIB began March 1997 and ended June 2001. *Id.* Because Plaintiff continued to work after his extended period of eligibility ended, his entitlement to DIB terminated June 2001. *See* 20 C.F.R. § 404.1592a(a)(3)(i). The SSA determined that Plaintiff was not entitled to the benefits he had received from June 1997 to December 1997 and from June 1998 to June 1999, during his extended period of eligibility, because he had worked during these months. R. 58. As a result, the SSA found that Plaintiff had been overpaid. R. 60-65.

In a form dated February 11, 2004,[3] Plaintiff requested a waiver of his overpayment, checking a box on the form indicating "[t]he overpayment was not [his] fault and [he] cannot afford to pay the money back and/or it is unfair for some other reasons." R. 66-73. Plaintiff stated that he "was never informed as to wages including contingent earnings" and that he "was told [he] was on a three-year back to work plan." R. 67. He noted that when he received notice to stop cashing his

---

[1] A person receiving DIB may try out his or her ability to work while continuing to receive full benefits. This trial work period ends after the ninth month (not necessarily consecutive) within a sixty-month period in which the recipient has been working. 42 U.S.C. § 422(c).

[2] The extended period of eligibility, or "reentitlement period," is a thirty-six-month period after the trial work period during which the DIB recipient's benefits are not entirely terminated by work. The recipient is not entitled to benefits for any month in which he or she worked, but is entitled to receive benefits for any month he or she does not work. 42 U.S.C. § 423(e); 20 C.F.R. § 404.1592a.

[3] It is unclear whether, or when, the form was actually submitted to SSA. There is no record of any action being taken on it until Plaintiff resubmitted it on March 13, 2006. *See* R. 128-29. Notes kept by collection agents between 2004 and 2006 suggest that they were unaware of Plaintiff's having submitted a completed waiver form. *See* R. 130-36.

checks he complied, and stated that previously "Social Security District Office personnel Ms. Soseby and Ms. Owen informed [him] on two occasions that [he] was to cash the checks because [he] could not turn them in at the District Office." *Id.* In response to the question "Did you tell us about the change or event that made you overpaid?" Plaintiff stated that he "discussed it with Mr. Blum on at least two occasions." *Id.* In an attached "Summary of Dates and Events" Plaintiff noted that on approximately January 15, 1998, he had met with "SSA Blum and reviewed contingent contract arrangement with teaching part-time at Trident Technical College." R. 76.

Some time before April 2006 Plaintiff's request for waiver was denied. R. 130  Plaintiff requested a hearing by an Administrative Law Judge ("ALJ") on March 13, 2006. R. 79. The SSA scheduled a hearing for November 7, 2006. R. 84.

**B.    Hearing Testimony**

Plaintiff appeared at the hearing before the ALJ on November 7, 2006, without representation. The ALJ explained that after determining whether there had been an overpayment, "the next question is . . . [w]ere you at fault, did you fail to disclose your income and things of that nature?" R.189-90. Plaintiff responded that "[he] did disclose [his] income," and that he had "acted in good faith the whole way through this thing." R. 190. The ALJ inquired whether Plaintiff had "answered every year that [he was] making income, . . . reported it to the Social Security Administration?" *Id.* Plaintiff answered "no," stating that he "reported to the Internal Revenue Service." *Id.*

Plaintiff noted that he had gone from a contingent part-time contract with Trident to permanent employment in June or July of 1999, and that he had worked under the prior contract for "two or three years." R. 191. He stated further that prior to entering permanent employment in 1999

he "met with Social Security personnel" and told them that he was "making some part time pay on a . . . contingency basis with Tri[dent] Technical College" but did "not think this is what's . . . called wages by the Social Security Administration" and just "wanted to let [them] know what [he was] doing." *Id.* He stated that he was "particularly concerned at the point where [he was] permanently hired . . . in July of 1999." *Id.*

The ALJ asked Plaintiff whether he had known that "once you earn . . . actual wages or paid for work that there's a certain amount of money that once you go over that you're considered no longer disabled?" R. 192. Plaintiff responded that "Mr. Blume informed me of that around June 15, 1999," explaining that "Mr. Blume is a Social Security employee." *Id.* Plaintiff also stated that "[n]obody ever wrote me any letters . . . or gave me any documents that stated . . . the different wage considerations." R. 194. He suggested that because he "was earning contingency contracts," he was "never paid any wages." *Id.* The ALJ explained that "whether it's wages they take Social Security out of, or whether it's a contract it's still earned income." *Id.* Plaintiff responded that "[w]hen [he] took this over to Mr. Blume . . . back in January of 1998 and again in 1999, . . . he said don't worry about it. You have three years to work under a plan we have and . . . when you become a permanent employee in July or June of 1999 then . . . I'll prepare a form for you." *Id.* In response to the ALJ's question, Plaintiff stated that he was being treated for mental health at the time [1996-1999] and was still being treated, adding that "[s]ome mornings [he] can't get out of bed." R. 195.

**C.    ALJ's Decision**

The ALJ reviewed Plaintiff's testimony and relevant information from the documents submitted by Plaintiff. The ALJ noted that Plaintiff claimed in his "Supplemental Submissions" that "[o]n or about Jan. 15, 1998, he began to telephone and visit the district Social Security office for

purposes of informing the Agency about [his] changing work conditions." R. 25. The ALJ further noted that Plaintiff claimed "that he was working on a contingent basis as an instructor at Trident Technical College" and that "Mr. Bloom informed him that he could receive benefits under a three year provision of a back to work program." *Id.* The ALJ analyzed as follows:

> I find that [Plaintiff] was at fault in causing and accepting the overpayment. [Plaintiff] is not credible in his representations regarding the circumstances surrounding the acceptance of the overpayment. When [Plaintiff] applied for and received benefits, he was informed of his duty to report earnings if he ever returned to work. He knew or should have known that his work after the trial work period terminated would affect his social security disability checks. He was aware of the responsibilities of working and how it affected his benefits. He should have known that his earnings exceeded the levels for [substantial gainful activity] and should have returned any payments in question. Therefore, [Plaintiff] was at fault in causing and accepting the overpayment.

R. 26.

> The ALJ made the following findings in his decision denying benefits:
>
> 1.   The claimant was not entitled to benefits totaling $18,710.90.
>
> 2.   The claimant was overpaid benefits.
>
> 3.   The claimant was at fault in causing and accepting the overpayment.
>
> 4.   Ann R. Robson (C1) and Katherine B. Robson (C2) were not entitled to benefits totaling $12,072.00.
>
> 5.   Ann R. Robson (C1) and Katherine B. Robson (C2) were overpaid benefits.
>
> 6.   As the claimant was the payee for Ann R. Robson (C1) and Katherine B. Robson (C2), he is at fault in causing and accepting these overpayments.
>
> 7.   Recovery of the overpayments cannot be waived.

R. 26–27.

## II.  STANDARD OF REVIEW

This Court's review of the Commissioner's final decision is limited to determining whether the correct law was applied and whether the factual findings are supported by substantial evidence. *See Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  "Substantial evidence" has often been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion," or "more than a mere scintilla but . . . somewhat less than a preponderance."  *Shivley v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).  The role of this Court is not to review the evidence *de novo* or resolve conflicts in the evidence.  *Vitek v. Finch*, 438 F.2d 1157, 1157 (4th Cir. 1971).  Rather, the Commissioner's factual determinations "must be upheld if [they are] supported by substantial evidence in the record as a whole."  *Howard v. Secretary of Health & Human Services*, 741 F.2d 4, 8 (2d Cir. 1984).  "However, the courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational."  *Vitek*, 438 F.2d at 1157-58.

## III.  THE APPLICABLE LAW AND REGULATIONS

The Social Security Act provides that "[w]henever the Commissioner . . . finds that more or less than the correct amount of payment has been made to any person under this subchapter, proper adjustment or recovery shall be made."  42 U.S.C. § 404(a)(1).  A person who is overpaid is generally required to repay the excess amount, 42 U.S.C. § 404(a)(1)(A), except that "there shall be no adjustment to payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience."  42 U.S.C. § 404(b).  But even if "the Administration may have been

at fault in making the overpayment, that fact does not relieve the overpaid individual . . . from liability for repayment if such individual is not without fault." 20 C.F.R. § 404.507.

The overpaid individual has the burden of proving that he was without fault. *Anderson v. Sullivan*, 914 F.2d 1121, 1122 (9th Cir. 1990). The individual is at fault if "the facts show that the incorrect payment" resulted from:

> (a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or
>
> (b) Failure to furnish information which he knew or should have known to be material; or
>
> (c) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect.

20 C.F.R. § 404.507. "In determining whether an individual is at fault, the [SSA] will consider all pertinent circumstances, including the individual's age and intelligence, and any physical, mental, educational, or linguistic limitations (including any lack of facility with the English language) the individual has." *Id.*

## IV.  DISCUSSION

The Magistrate Judge determined that the Commissioner's decision was not supported by substantial evidence. ECF No. 31 at 6. The Magistrate Judge stated that "the ALJ failed to address any of the factors outlined in 20 C.F.R. § 404.507 in determining that Plaintiff was not 'without fault.'" *Id.* According to the Magistrate Judge, the "ALJ did not discuss Plaintiff's mental limitations or the effect on whether he was 'at fault'" despite the evidence presented by Plaintiff of continuing mental health treatment and Plaintiff's testimony that "some mornings he could not get out of bed." *Id.* The Magistrate Judge noted that Plaintiff had appeared at the hearing without counsel, and that "in *pro se* cases, an ALJ has 'a duty to assume a more active role in helping

claimants develop the record.'" *Id.* (quoting *Sims v. Harris*, 631 F.2d 26 (4th Cir. 1980)). The Commissioner objected that because "Plaintiff had the burden to establish he was without fault . . . and he presented no evidence that his age, intelligence, education or physical and mental conditions interfered with his ability to understand his reporting requirements," the "ALJ was not required to make explicit findings regarding the impact of" these factors in his finding of fault. *Id.* at 3.

In adjudicating a request for waiver of overpayment, the ALJ is required to make findings of fact concerning the three definitions of fault listed in 20 C.F.R. § 404.507, and must consider "pertinent circumstances," including those listed in the regulation. *Anderson v. Sullivan*, 914 F.2d 1121, 1123 (9th Cir. 1990). If a claimant makes a showing that these "pertinent circumstances" have any relation to the overpayment, the ALJ must "make explicit fact findings regarding the applicability of these circumstances." *Id.* at 1123 n.2. In the absence of such a showing, "the ALJ [is] not obliged to render a specific finding regarding" any of these circumstances. *Id.* at 1123. Although Plaintiff submitted ample evidence of his treatment for depression over the course of many years, Plaintiff made no showing or argument suggesting how his depression might have affected his understanding of his reporting requirements. *See, e.g.*, R. 141-183. Accordingly, the ALJ was not required to make specific findings concerning Plaintiff's mental limitations.

The Magistrate Judge is correct that the ALJ was required to "assume a more active role in helping [Plaintiff] develop the record" because Plaintiff appeared *pro se*. However, the numerous exhibits in this case demonstrate that Plaintiff, a former attorney who had been working as a college instructor in recent years, was able to fully develop the record and support his arguments. Plaintiff submitted a "Memorandum of Facts and Law," a timeline of events, a supplemental statement concerning the overpayment, correspondence with SSA officials, and many other documents for the

ALJ's consideration. Plaintiff's primary contention throughout was that he had properly informed the SSA of his income, not that his depression prevented him from understanding his obligation to do so. At the hearing the ALJ asked Plaintiff several questions attempting to elucidate whether Plaintiff had for any reason not understood his reporting obligations. *See* R. 189-95. The ALJ also kept the record open for an additional two weeks after the hearing so that Plaintiff could submit additional documentary evidence. R. 193. The ALJ's assistance to Plaintiff was sufficient under the circumstances.

The Magistrate Judge also stated that the ALJ's finding that Plaintiff was not "without fault" was based on "the ALJ's determination that Plaintiff was not credible," and that the ALJ "merely made [a] conclusory statement" regarding Plaintiff's lack of credibility. ECF No. 31 at 6. The Magistrate Judge stated that "[i]t is not sufficient for an adjudicator to make a single, conclusory statement that 'the individual's allegations have been considered,'" and that the credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." *Id.* at 6-7 (quoting SSR 96-7p). Accordingly, the Magistrate Judge found that the ALJ's credibility determination was not supported by substantial evidence.

The Commissioner objected that the ALJ's credibility determination was supported by substantial evidence in the record. The Commissioner stated that "[w]hile Plaintiff claims that he did advise the Agency of his work activity, there is no actual documentation prior to January 2000 that Plaintiff did so," and that "there is absolutely no evidence that Plaintiff received erroneous information about a 'three year back to work plan.'" *Id.* at 2. The Commissioner further stated that "on February 21, 2000, [Plaintiff] misrepresented his work history and asserted that he began working on June 15, 1999; completely failing to mention his work activity since 1996," and "did not

admit to this earlier work until after the Agency received information about it from his employer on May 18, 2000." *Id.* Because Plaintiff claimed in his January 25, 2000, letter that he had reported his earlier work activity in 1998, the Commissioner argues, Plaintiff "knew that he should have reported his work activity in 1998." *Id.* at 2-3.

The ALJ's determination of Plaintiff's credibility was sufficiently supported. The Magistrate Judge cited Social Security Ruling 96-7p, "Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements," for the proposition that "a single, conclusory statement" regarding credibility is not sufficient. *See* ECF No. 31 at 6-7. Ruling 96-7p deals specifically with the problem of evaluating a disability claimant's statements concerning subjective symptoms – in particular, pain – that frequently "cannot be [determined] on the basis of objective medical evidence." SSR 96-7p at *1. In such a scenario, "the adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements." *Id.* However, Ruling 96-7p by its own terms does not apply to credibility determinations in the context of a waiver of overpayment, where a claimant's statements are more likely to be verifiable through objective evidence.

In *Anderson*, an overpayment disability claimant applying for waiver challenged the ALJ's adverse credibility finding as inadequate. *Anderson*, 914 F.2d at 1123. The ALJ's report stated only that the claimant's "testimony that he informed the [SSA] of the two social security numbers is not credible." *Id.* Because the Court reviewed the record and found the ALJ's credibility finding to be supported by substantial evidence, the Court affirmed the ALJ's decision despite the lack of a more expansive explanation. *Id.* at 1123-24.

In this case, although the ALJ did not explain the specific reasons for finding Plaintiff not credible, the record demonstrates that the ALJ's finding is supported by substantial evidence. Plaintiff was overpaid because he continued to collect DIB from 1996 to 1999 while he was working as a college instructor on an independent contractor basis and earning a significant income. Plaintiff continued to receive DIB during this time because he did not report his work activity to the SSA until 2000, after he had been hired as a permanent employee. Even then Plaintiff did not report the earlier work, claiming that he had started working in 1999. Only after Plaintiff's employer informed the SSA about his earlier work did Plaintiff report it personally.

Plaintiff's contention is that he informed the SSA of his work situation in early 1998 and was told either that independent contractor income did not constitute "wages" that must be reported or that he was exempt under a "three-year plan." Although Plaintiff provided copies of multiple letters he had sent to the SSA, he produced no documentary evidence of this contact. In any event, even if Plaintiff had received this erroneous information in 1998, he still would have failed to report his income in 1996 and 1997. In response to the ALJ's direct questions at the hearing attempting to determine whether Plaintiff had understood his obligation to report his income, Plaintiff gave evasive and inconsistent answers. It is apparent that the ALJ based his adverse credibility determination on the fact that Plaintiff's statements were contradicted by the evidence in the record.

The ALJ applied the correct law and found that Plaintiff was at fault because he failed to furnish information that he knew or should have known to be material. Because the ALJ's determination that Plaintiff was at fault is supported by substantial evidence, it must be upheld.

## V. CONCLUSION

After a thorough review of the Report and Recommendation and the record in this case, the

court hereby declines to adopt the Magistrate Judge's Report and Recommendation. The Commissioner's decision is, therefore, affirmed.

**IT IS SO ORDERED.**

s/ Margaret B. Seymour  
Margaret B. Seymour  
United States District Judge

September 22, 2011  
Columbia, South Carolina